# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**CHANDRA GOVERNOR**                                           **CIVIL ACTION NO.**

**VERSUS**                                                             **20-54-BAJ-EWD**

**COMMISSIONER OF SOCIAL
SECURITY**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U.S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on March 2, 2021.

**ERIN WILDER-DOOMES
UNITED STATES MAGISTRATE JUDGE**

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**CHANDRA GOVERNOR**                          **CIVIL ACTION NO.**

**VERSUS**                                    **20-54-BAJ-EWD**

**COMMISSIONER OF SOCIAL
SECURITY**

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Chandra G. Governor ("Plaintiff") brought this action under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for disability insurance benefits ("DIB") and supplemental security income ("SSI").[1] Plaintiff has filed a Memorandum in Support of Appeal[2] and the Commissioner has filed an Opposition Memorandum.[3]

Based on the applicable standard of review under 42 U.S.C. § 405(g), substantial evidence supports the Commissioner's decision and the administrative law judge applied the correct legal standards. Accordingly, it is recommended that the Commissioner's decision be **AFFIRMED**.

## I.    Procedural History

On May 9, 2017, Plaintiff filed an application for SSI and DIB[4] alleging disability beginning January 1, 2016.[5] At the time of the applications, the Commissioner determined that the date that Plaintiff will last meet the insured status requirements of the Social Security Act is

---

[1] *See* AR pp. 157-62 (application for SSI); AR pp. 163-64 (application for DIB); and AR pp. 1-4 (Notice of Appeals Council Action). References to documents filed in this case are designated by "(R. Doc. [docket entry number(s)] p. [page number(s)]." References to the record of administrative proceedings filed in this case are designated by "(AR p. [page number(s)]."

[2] R. Doc. 10.

[3] R. Doc. 12.

[4] AR pp. 157, 163. The DIB application is dated September 28, 2017; however, the application states that the Social Security Administration took Plaintiff's application on May 9, 2017.

[5] AR pp. 157, 163. The initial determination and the ALJ used this date as the alleged onset date for both applications, (AR pp. 12, 68, 79), despite that the record reflects that Plaintiff's alleged onset date was set at the date of her application, May 9, 2017, in connection with the processing of her SSI claim. AR p. 192.

December 31, 2021.[6]   Both claims were initially denied on September 25, 2017.[7]   Thereafter, Plaintiff timely requested a hearing before an ALJ.[8]   A hearing was held on October 17, 2018, at which Plaintiff, who was represented by counsel, testified.[9]   Vocational Expert ("VE") Patricia Knight ("Knight") also testified.[10] On February 26, 2019, the ALJ issued a notice of unfavorable decision.[11]   Plaintiff timely requested review by the Appeals Council.[12]   Plaintiff was represented by counsel in her request for review.[13]   On December 4, 2019, the Appeals Council denied Plaintiff's request for review.[14]

On January 28, 2020, Plaintiff timely filed her Complaint in this Court.[15]   Accordingly, Plaintiff exhausted her administrative remedies before timely filing this action for judicial review and the Appeals Council's decision is the Commissioner's final decision for purposes of judicial review.[16]

## II.    Standard of Review

Under 42 U.S.C. § 405(g), judicial review of a final decision of the Commissioner denying disability benefits is limited to two inquiries: (1) whether substantial evidence exists in the record as a whole to support the Commissioner's findings, and (2) whether the Commissioner's final

---

[6] AR p. 71.  Plaintiff's earnings history is at AR pp. 165-91. The Administrative Law Judge's ("ALJ") February 26, 2019 decision notes that Plaintiff's date last insured is December 31, 2022. AR pp. 12, 14.  The date last insured is not at issue in this appeal.

[7] AR pp. 66-67. Plaintiff was notified of the decision by letters dated September 26, 2017.  AR pp. 90-97.

[8] AR pp. 98, 100-01. Plaintiff requested the hearing on October 3, 2017.

[9] AR pp. 116-19, 147 (fee agreement and appointment of representatives); AR pp. 148-49 (notice of hearing); AR pp. 27-65 (transcript of hearing).

[10] AR pp. 274-75 (Knight's resume).

[11] AR pp. 9-26.  The Court Transcript Index incorrectly lists the date as "February 21, 2019."

[12] AR pp. 7-8.

[13] AR pp. 276-77 (Plaintiff's brief to the Appeals Council submitted through counsel).

[14] AR pp. 1-4.

[15] R. Doc. 1.

[16] See 20 C.F.R. § 404.981 ("The Appeals Council may deny a party's request for review or it may decide to review a case and make a decision.  The Appeals Council's decision, or the decision of the administrative law judge if the request for review is denied, is binding unless you or another party file an action in Federal district court, or the decision is revised.  You may file an action in a Federal district court within 60 days after the date you receive notice of the Appeals Council's action.").

decision applies the proper legal standards.[17]  If the Commissioner fails to apply the correct legal standards, or fails to provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal.[18]

## III.    The ALJ's Decision

A claimant has the burden of proving that he or she suffers from a disability, which is defined as a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity.[19]  The regulations require the ALJ to apply a five-step sequential evaluation to each claim for benefits.[20]   In the five-step sequence used to evaluate claims, the Commissioner must determine whether: (1) the claimant is currently engaged in substantial gainful activity; (2) the claimant has a severe medically determinable impairment(s); (3) the impairment(s) meets or equals the severity of a listed impairment in 20 C.F.R. Subpart P, Appendix 1 of the regulations; (4) the impairment(s) prevents the claimant from performing past relevant work; and, (5) the impairment(s) prevents the claimant from doing any other work.[21]

The burden rests upon the claimant to prove disability throughout the first four steps of this five-step process.[22]  If the claimant is successful at all four of the preceding steps then the burden shifts to the Commissioner to prove, considering the claimant's residual functional capacity ("RFC"), age, education and past work experience, that he or she is capable of performing other work.[23]   If the Commissioner proves other work exists which the claimant can perform, the

---

[17] *Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001); *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).

[18] *Bruno, M v. U.S. Commissioner, Social Security Administration,* No. 19-00886, 2020 WL 5269741, at *3 (W.D. La. Aug. 6, 2020), *report and recommendation adopted sub nom., Bruno v. Commissioner, Social Security Administration*, No. 19-00886, 2020 WL 5261150 (W.D. La. Sept. 3, 2020) *citing Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987) and *Western v. Harris*, 633 F.2d 1204, 1206 (5th Cir. 1981).

[19] 20 C.F.R. § 404.1505, 20 C.F.R. § 416.905.

[20] 20 C.F.R. § 404.1520, 20 C.F.R. § 416.920.

[21] *Masterson v. Barnhart*, 309 F.3d 267, 271 (5th Cir. 2002).

[22] *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).

[23] 20 C.F.R. § 404.1520(g)(1).

claimant is given the chance to prove that he or she cannot, in fact, perform that work.[24]

Here, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the January 1, 2016 alleged onset of disability.[25] At the second step, the ALJ found that Plaintiff had the following severe impairments:  schizoaffective disorder, bipolar disorder, depressive disorder, and substance abuse, which significantly limited her ability to perform basic work activities.[26] At the third step, the ALJ found that Plaintiff's impairments,[27] considered alone or in combination, did not meet or medically equal the criteria of 12.03, "Schizophrenia spectrum and other psychotic disorders," or 12.04 "Depressive, bipolar and related disorders."  In making this finding, the ALJ considered the revised "paragraph B" criteria listed in 20 C.F.R. Subpart P, Appendix 1, 12.00(E),[28] and the effects of those impairments on Plaintiff's functional abilities.[29]

Although the ALJ found Plaintiff's mental impairments to be "severe,"  he also found that these impairments did not meet or equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 because  Plaintiff's  mental  impairments  did  not  result  in  more  than

---

[24] *Muse*, 925 F.2d at 789.

[25] Plaintiff indicated a disability onset date of January 1, 2016 (AR pp. 157, 163); however, during the hearing, Plaintiff's counsel explained that the disability onset date was more properly set at "March 9, 2016," the alleged date on which Plaintiff called a medical provider regarding suicidal ideations, as purportedly reflected in the medical records.  *See* AR p. 31, hearing testimony referring to the medical record at AR p. 299.  However, as the ALJ pointed out at the hearing, that medical record reflects that the referenced event took place on June 3, 2016.  Nevertheless, the ALJ relied on the earlier January 1, 2016 date as Plaintiff's disability onset date.  *See* AR p. 14. On appeal, Plaintiff has not contested the application of the January 1, 2016 onset date.

[25] AR p. 14.

[26] AR p. 15.

[27] Listed  impairments  are  descriptions  of  various  physical  and  mental  illnesses  and  abnormalities  generally characterized by the body system they affect.  Each impairment is defined in terms of several specific medical signs, symptoms, or laboratory test results.  For a claimant to show that his impairment matches a listed impairment, he must demonstrate that it meets all of the medical criteria specified in the listing.  An impairment that exhibits only some of the criteria, no matter how severely, does not qualify.  *Sullivan v. Zebley*, 493 U.S. 521, 529-32 (1990), *superseded by statute on other grounds* (citations omitted); 20 C.F.R. § 404.1525; 20 C.F.R. § 416.925.

[28] The revised "paragraph B" criteria were in effect when Plaintiff's applications were filed and when the Appeals Council issued its Notice of Action on December 4, 2019.  AR p. 1.  *See Williams v. Berryhill*, No. 16-01367, 2018 WL 1006057, at *9 (W.D. La. Jan. 17, 2018) (*citing* Revised Medical Criteria for Evaluating Mental Disorders, 81 FR 66138-01, 2016 WL 5431732 (Sept. 26, 2016) and explaining that "[t]he SSA stated that it will use the new rules on or after their effective date in any case in which it makes a determination or decision. The SSA expects the Federal courts will review its final decisions using the rules that were in effect at the time it issues the decisions.").

[29] AR p. 15.

"moderate" limitations in any functional area.[30]   The ALJ also found that there was no evidence to establish the requirements of the paragraph C criteria (that the impairments were "serious and persistent," supported by at least two years of medically documented history of both medical treatment and "marginal adjustment" (minimal capacity to adapt to changes in environment or to demands that are not already part of daily life).[31]

Next, the ALJ found that Plaintiff had the RFC[32] to perform a full range of work at all exertional levels but with the following nonexertional limitations:   Plaintiff can understand, remember, and carry out one and two-step instructions and can occasionally interact with coworkers and supervisors, but can never interact with the public.[33]

The ALJ then evaluated Plaintiff's RFC to determine whether, despite her severe impairments, she was able to do any of her past relevant work.[34]   The ALJ found that Plaintiff had past relevant work as a housekeeping cleaner (Dictionary of Occupational Titles ("DOT")[35] 323.687-014), a fast food worker (DOT 311.472-010), and a dining room attendant (DOT 311.677-018), all of which are classified as unskilled.[36] Per SSR 82-62, Plaintiff's past work was substantial gainful activity, was performed long enough for Plaintiff to achieve average performance, and was

---

[30] AR p. 15 *and see* listings 12.03 and 12.04.  The earliest of all of the medical records is dated March 9, 2016 and while it notes a history of depression, Plaintiff denied depression during that visit.  AR p. 278.  The first medical record that directly references Plaintiff's impairments is dated April 14, 2016, and it predates Plaintiff's benefits applications by about one year and one month. AR pp. 157, 163, 338.

[31] AR pp. 15-16.

[32] "Residual functional capacity" is a measure of a claimant's capacity to do physical and mental work activities on a regular and sustained basis.  It is the foundation of the findings at steps four and five of the sequential evaluation process. 20 C.F.R. § 404.1545, 20 C.F.R. § 416.945.

[33] AR p. 16.

[34] *See* 20 C.F.R. § 404.1565 and 20 C.F.R. § 416.965.

[35] The DOT comprises a categorical listing of job titles in the United States, along with descriptions of the maximum requirements for each job, including the associated exertion levels and reasoning abilities. *Sasich v. Colvin,* No. 15-461-JWD-RLB, 2016 WL 7826808, at *4 (M.D. La. Nov. 14, 2016), *report and recommendation adopted*, No. 15-461-JWD-RLB, 2017 WL 188133 (M.D. La. Jan. 17, 2017), *citing Gaspard v. Social Security Admin. Com.'r*, No. 07-943, 609 F.Supp.2d 607, 612 (E.D. Tex. April 8, 2009). The Commissioner primarily relies on the DOT for information about the requirements of work in the national economy at steps four and five of the sequential evaluation process. SSR 00-04P, 2000 WL 1898704.

[36] AR pp. 60-61 (Knight testimony) and AR pp. 20-21.

performed within the relevant time period.[37] However, because the VE testified that an individual with Plaintiff's age, education, work experience, and RFC would be unable to perform the demands of her past work,[38] the ALJ found that Plaintiff was unable to perform her past relevant work.

Proceeding to the fifth step, the ALJ relied on the Medical-Vocational Guidelines (20 C.F.R. Part 404, Subpart P, Appendix 2) as a framework and the testimony of the VE to make his disability finding.[39] Specifically, the ALJ found that Plaintiff was a younger individual aged 18-49 based on Plaintiff's age of 47 at the alleged onset of disability, and that Plaintiff had a limited education but can communicate in English.[40]

The ALJ found that transferability of job skills was not material to the disability determination because using the Guidelines as a framework supported a finding that Plaintiff is "not disabled" whether or not she has transferable job skills.[41] Next, the ALJ found that, considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.[42] In making this finding, the ALJ used the Medical Vocational Guidelines as a framework because the ALJ found that Plaintiff's ability to perform work at all vocational levels was compromised by only nonexertional limitations.[43] To determine the extent to which Plaintiff's limitations eroded the occupational base of unskilled work at all exertional levels, the ALJ relied on the testimony of the VE regarding

---

[37] *See* AR p. 20 *citing* Titles II & XVI: A Disability Claimant's Capacity to Do Past Relevant Work, in Gen., SSR 82-62 (S.S.A. 1982), 1982 WL 31386, *and see* 20 C.F.R. § 404.1565, § 416.965; 20 C.F.R. §§ 404.1571-404.1575 and 20 C.F.R. §§ 416.971-416.975.

[38] AR pp. 61-62 (Knight testimony).

[39] The Commissioner may use VE testimony at steps four and five of the sequential evaluation process to resolve complex vocational issues and provide evidence at the hearing before the ALJ. SSR 00-04P, 2000 WL 1898704.

[40] AR p. 20. *See* 20 C.F.R. § 404.1563, 20 C.F.R. § 416.963, and AR p. 163 (Plaintiff's birthday is September 26, 1968). *See* 20 C.F.R. § 404.1564, 20 C.F.R. § 416.964, AR p. 195 (Plaintiff can speak, read, and understand English), and AR p. 197 (Plaintiff reported to SSA that she completed 9th grade).

[41] AR p. 20.

[42] AR p. 20 *citing* 20 C.F.R. § 404.1569, 20 C.F.R. § 404.1569a, 20 C.F.R. § 416.969 and 20 C.F.R. § 416.969a.

[43] AR p. 20 *citing* SSR 85-15.

whether jobs existed in the national economy for an individual with Plaintiff's age, education, work experience and RFC, *i.e.*, Plaintiff can occasionally interact with coworkers and supervisors but never with the public; retained the capacity to understand, remember, and carry out one and two step instructions; and has no exertional limitations.[44]  The VE considered these factors and testified that Plaintiff could perform the requirements of the following occupations:  (1) poultry hanger (DOT 525.687-078), medium exertional level, unskilled with 625 jobs nationally; (2) garment bagger (DOT 920.687-018), light exertional level, unskilled with 898 jobs nationally; (3) commercial cleaner (DOT 381.786-014), heavy exertional level, unskilled with 15,913 (sic, 15,914) jobs nationally; and (4) garbage collector (DOT 955.687-022), very heavy exertional level, unskilled, 74,102 jobs nationally.[45]  In light of the foregoing, the ALJ found that Plaintiff had not been under a disability from the alleged onset date through the date of his decision.  The Appeals Council denied review of the ALJ's decision that Plaintiff was not disabled.[46]

## IV.    Plaintiff's Allegation of Error

On appeal, Plaintiff argues one assignment of error.  Plaintiff contends that the ALJ's analysis of the "treating and examining opinion evidence" is contrary to the regulations and applicable Fifth Circuit precedent; in particular, Plaintiff argues that the opinions of consultative examiner, Donnell Ashford ("Ashford") and Plaintiff's treating mental health provider, Brittany Tucker ("Tucker"),  established that Plaintiff is disabled and the ALJ erred in rejecting the opinions of Tucker and Ashford as unpersuasive.[47]

---

[44] Citing SSR 00-4P, the ALJ specifically found that the VE's testimony was consistent with the information contained in the DOT.  AR p. 21.
[45] AR p. 21.  *See* the VE's testimony at AR p. 62 (and noting that, in Louisiana, there were eight poultry hanger jobs; three garment bagger jobs; 204 commercial cleaner jobs; and 908 garbage collector jobs).
[46] AR p. 1.
[47] R. Doc. 10, pp. 1, 3.

## VI.    Law and Analysis

If substantial evidence supports the Commissioner's findings, they are conclusive and must be affirmed.[48]  Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion.  It is more than a mere scintilla and less than a preponderance.[49] A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision.[50] Conflicts in the evidence are for the Commissioner to decide, and if substantial evidence is found to support the decision, the decision must be affirmed even if there is evidence on the other side.[51]  In applying the substantial evidence standard, the court must review the entire record as whole, but may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner, even if the evidence weighs against the Commissioner's decision.[52]

What Plaintiff really seeks is to have this Court reweigh the evidence in this case and come to a different conclusion than did the Commissioner.  The Court is not permitted to do so.  While certainly there is evidence in the record that could have permitted the ALJ to reach a different conclusion regarding whether Plaintiff's mental impairments render her disabled, the ALJ applied the correct legal standards and substantial evidence supports his findings.

---

[48] *Richardson v. Perales*, 402 U.S. 389-90, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995) (*superseded by statute on other grounds*, *see Stancle v. Colvin,* No. 4:15-00405-CAN, 2016 WL 3172784, at *8, n. 11 (E.D. Tex. June 7, 2016).
[49] *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).
[50] *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (*quoting Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000)).
[51] *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002); *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990).
[52] *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).

## A. The ALJ Did Not Err in His Consideration and Treatment of The Medical Evidence

### 1. Revised Legal Standard on Treatment and Articulation of Medical Opinions and Prior Administrative Medical Findings

At issue here is the ALJ's treatment of medical opinions[53] and prior administrative findings.[54] As Plaintiff and the Commissioner agree,[55] consideration of medical opinions and prior administrative medical findings is governed by the revised rules in 20 C.F.R. § 404.1520c and 20 C.F.R. § 416.920c, which apply to claims, such as Plaintiff's, filed after March 27, 2017.[56] As correctly cited by the ALJ, 20 C.F.R. § 404.1520c provides that the Commissioner *will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from the claimant's medical sources*.[57] When a medical source[58] provides one or more medical opinions or prior administrative medical findings, the medical opinions or prior administrative medical findings from that medical source

---

[53] Medical opinions are statements from a medical source about what the claimant can still do despite her impairment(s) and whether the claimant has one or more impairment-related limitations or restrictions in certain abilities. These may include claimant's ability to (i) perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching); (ii) perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting; (iii) perform other demands of work, such as seeing, hearing, or using other senses; and, (iv) adapt to environmental conditions, such as temperature extremes or fumes. 20 C.F.R. § 404.1513(a)(2) *and see* 20 C.F.R. § 416.913(a)(2)(i)(A)-(D).

[54] Prior administrative findings are findings other than the ultimate determination about whether the claimant is disabled, about a medical issue made by the Commissioner's federal and state agency medical and psychological consultants at a prior level of review of the claimant's current claim based on their review of the evidence in the case record. Such findings could be on issues including: (i) the existence and severity of the claimant's impairment(s); (ii) the existence and severity of the claimant's symptoms; (iii) statements about whether the claimant's impairment(s) meets or medically equals any listing in the Listing of Impairments in Part 404, Subpart P, Appendix 1; (iv) the claimant's RFC; (v) whether the claimant's impairment(s) meets the duration requirement; and (vi) how failure to follow prescribed treatment and drug addiction and alcoholism relate to the claimant's claim. 20 C.F.R. § 404.1513(a)(5).

[55] R. Doc. 10, p. 4 and R. Doc. 12, pp. 4-5.

[56] As 20 C.F.R. § 404.1520c and 20 C.F.R. § 416.920c are nearly identical, the remainder of this Report will refer only to the former for the sake of brevity. *See also* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 FR 5844-01, 2017 WL 168819 (January 18, 2017), for a discussion of the revisions.

[57] *See* 20 C.F.R. § 404.1520c(a) (emphasis added) and AR p. 18. The revised regulations did not retain the "treating source rule," which could require deference to treating source opinion evidence. *See* 20 C.F.R. § 404.1527, 20 C.F.R. § 416.927 which continue to apply to claims filed before March 27, 2017.

[58] The revised regulation no longer uses the term "treating source," but rather "medical source" to refer to the sources of medical evidence proffered by the claimant.

are to be considered together using the factors listed in (c)(1) through (c)(5) of 20 C.F.R. § 404.1520c. The ALJ is not required to articulate how he considered each medical opinion or prior administrative medical finding from one medical source individually.

The most important factors considered when evaluating the persuasiveness of medical opinions and prior administrative medical findings are supportability[59] and consistency.[60] The ALJ must explain the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in his determination, and he may, but is not required to, explain how he considered the (c)(3) and (c)(5) factors, *i.e.*, relationship with the claimant,[61] specialization, and "other factors."[62]  Only *if the ALJ finds* that there are two or more medical opinions or prior administrative medical findings about the same issue that are both equally well-supported and consistent with the record but are not exactly the same, must the ALJ articulate consideration of the (c)(3) through (c)(5) other most persuasive factors for those medical opinions or prior administrative medical findings in the determination.[63]

### 2. The ALJ Adequately Explained His Consideration of the Medical Evidence Under 20 C.F.R. § 404.1520c

Plaintiff's argument asserting that the relevant 20 C.F.R. § 404.1520c analysis is a "two-step inquiry" involving application of the (c)(3) through (c)(5) other most persuasive factors to

---

[59] "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1).

[60] "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2).

[61] This includes consideration of the length of the treatment relationship, the frequency of examinations, the purpose of the treatment relationship, the extent of the treatment relationship and whether there is an examining relationship. 20 C.F.R. § 404.1520c(c)(3)(i)-(v).

[62] 20 C.F.R. § 404.1520c(b)(2) and 20 C.F.R. § 404.1520c(c)(5) explaining consideration of "other factors that tend to support or contradict a medical opinion or prior administrative medical finding. This includes, but is not limited to, evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements."

[63] 20 C.F.R. § 404.1520c(b)(3).

more than one opinion that "c[ould] reasonably be found to be 'persuasive,'" misconstrues the applicable legal standard.[64] 20 C.F.R. § 404.1520c does not set forth an explicit "two-step inquiry" or require explanation of the (c)(3) through (c)(5) other most persuasive factors to medical opinions just because more than one of them *could* reasonably be found persuasive.[65] Rather, the ALJ must evaluate the persuasiveness of all of the medical opinions and prior administrative findings using the factors at 20 C.F.R. § 404.1520c(c)(1) through (5) as appropriate, but need only articulate the evaluation of the (c)(1) supportability and (c)(2) consistency factors with regard to those opinions and findings. *Only if the ALJ finds* that there are two or more equally persuasive medical opinions or prior administrative findings on the same issue does the ALJ then need to explain how the (c)(3) through (c)(5) other most persuasive factors were evaluated with respect to those opinions and findings.[66]

The ALJ's decision reflects that the ALJ individually considered medical records and opinions from several sources, to-wit:

1. Plaintiff's December 24, 2016 emergency room visit at OLOL, wherein Plaintiff tested positive for cocaine. The visit was prompted by an altercation between Plaintiff and her mother, during which EMS was called and reported that Plaintiff had pushed her mother against the wall and had her hands at her mother's throat. However, Plaintiff denied homicidal ideation and aggressive behavior and Plaintiff's mother also denied that Plaintiff was violent. On examination, Plaintiff was calm and cooperative, her speech was normal, her thought processes were linear and goal directed, her memory was intact, her

---

[64] Plaintiff's argument regarding the ALJ's alleged mistreatment of the "treating and examining opinion evidence" is misplaced, as it appears to refer to the former treating source rule, which was not retained. R. Doc. 10, pp. 1, 3. "…[W]e are not retaining the treating source rule in final 404.1520c and 416.920c for claims filed on or after March 27, 2017. Since we first adopted the current treating source rule in 1991, the healthcare delivery system has changed in significant ways that require us to revise our policies in order to reflect this reality. Many individuals receive health care from multiple medical sources, such as from coordinated and managed care organizations, instead of from one treating AMS.[FN36] These individuals less frequently develop a sustained relationship with one treating physician. Indeed, many of the medical sources from whom an individual may seek evaluation, examination, or treatment do not qualify to be "treating sources" as defined in current 404.1502 and 416.902 because they are not AMSs. These final rules recognize these fundamental changes in healthcare delivery and revise our rules accordingly." 82 FR 5844-01at 5853.
[65] *See* R. Doc. 12, pp. 11-12.
[66] 20 C.F.R. § 404.1520c(a), (b)(2), and (b)(3).

intelligence was average, her fund of knowledge and insight were fair, but her judgment was questionable.[67]

2. Plaintiff's post-application April 28, 2018 admission at Beacon for mental health issues. Plaintiff again tested positive for cocaine. On examination, Plaintiff was sedated and somewhat uncooperative; she displayed little insight; she was unkempt and disheveled; she avoided eye contact; she had slumped posture; her speech was slowed and soft; her affect was constricted; she had decreased thought flow; she had a short attention span and impaired concentration; her intelligence was estimated to be below average; and she was fully oriented but her memory was impaired.[68] However, by the next day, Plaintiff's appearance, eye contact, posture, and speech were within normal limits and she was cooperative. Her judgment was found mildly impaired, but her insight had improved, and she recognized the need for treatment.[69]

3. Plaintiff's August 23, 2017 consultative examination performed by Ashford, during which Plaintiff reported that she performs all of her own self-care skills; she does not sweep, mop, wash dishes or clothes, or cook; and she does not know anything about money. Ashford found Plaintiff to be appropriately groomed and dressed, cooperative and talkative, with an unremarkable mood and affect and intact recent and remote memory, and fair concentration. Ashford further found that Plaintiff's fund of information was poor, and her intellectual functioning was mildly impaired, but Plaintiff's judgment and insight were fair.[70]

4. Plaintiff's treatment from November 2017 until August 1, 2018 records at Impact. On examination, Plaintiff sometimes had poor insight and judgment, but sometimes had fair insight and judgment. Likewise, Plaintiff sometimes had circumstantial and verbose thought processes, but sometimes had linear thought processes. The records also reflected that Plaintiff's speech was regular in rate and rhythm and she was alert and oriented, but her affect was restricted.[71]

The ALJ also noted that at least five records spanning June 2017 through July 2018 showed that

Plaintiff was not compliant with her medications.[72]

---

[67] AR p. 17 *citing* OLOL records at AR pp. 360-62.
[68] AR pp. 17-18 *citing* Beacon records at AR pp. 431-35.
[69] AR p. 18 *citing* Beacon records at AR pp. 444, 451.
[70] AR p. 18 *citing* Ashford's evaluation at AR pp. 394-96.
[71] AR pp. 18 *citing* Impact records at AR pp. 414-21.
[72] AR p. 18 *citing* Tucker's Impact note at AR p. 387 (Plaintiff reported being out of medications for five days); Tucker Impact note at AR p. 415 ("MHP" [mental health professional] accompanying Plaintiff stated Plaintiff was not adherent to her medication regimen); Tucker Impact note at AR p. 414 (Plaintiff reported discontinuing medications); Beacon record at AR p. 431 (Plaintiff admitted not taking medications consistently); and Tucker Impact note at AR p. 420 (Plaintiff did not take an injection).

The ALJ evaluated the medical opinions of Tucker[73] and Ashford, as well as the prior administrative findings of Dr. Burnard Pearce ("Pearce"), Ph.D., the state agency medical consultant, as compared with the objective medical evidence. In compliance with 20 C.F.R. § 404.1520c, the ALJ found that Ashford's medical opinions were not persuasive using the supportability and consistency factors. Specifically, the ALJ concluded that Ashford's medical opinions were not persuasive because they were not supported by his notes.[74] According to Ashford's notes, Plaintiff was appropriately dressed and groomed, and cooperative and talkative, which did not support Ashford's opinion that Plaintiff would have difficulty responding appropriately to supervision and interacting appropriately with coworkers.[75] Further, Ashford's note finding that Plaintiff's concentration was fair did not support Ashford's opinion that Plaintiff would have difficulty maintaining attention to perform simple, repetitive tasks.[76] The ALJ also found that Ashford's opinions were not persuasive because they were inconsistent with Plaintiff's records from Beacon and OLOL, which reflected that Plaintiff's eye contact, appearance, and posture were within normal limits, Plaintiff was cooperative, and Plaintiff's speech and behavior were normal.[77] Based on the Beacon and OLOL evidence, the ALJ found that Plaintiff can occasionally interact with coworkers and supervisors, but never with the public.[78] Additionally,

---

[73] Plaintiff argues that Tucker's opinion, and Plaintiff's records from Beacon and Impact, were not reviewed at the time of the initial determination (R. Doc. 10, pp. 7, 20); however, these records were evaluated and discussed by the ALJ. *See* AR pp. 17-19.

[74] Ashford found Plaintiff: cooperative and talkative, with fair concentration but whose talkativeness interfered with her concentration, with relevant and logical thoughts that often rambled, with a poor fund of general information, and with fair judgment and insight. Ashford found that Plaintiff could not calculate change, could not mentally add or subtract single digits, and could not state the value of a quarter. Ashford suspected Plaintiff's intellectual functioning fell within the mildly impaired range. AR pp. 390-97. Ashford opined that Plaintiff was able to understand, remember and carry out simple instructions only; would have some difficulty maintaining attention to perform simple repetitive tasks for two hour blocks of time; would have difficulty responding appropriately to supervision and interacting appropriately with coworkers; would have difficulty sustaining effort and persisting at a normal pace over the course of a routine 40-hour work week; and would have difficulty tolerating the stress/pressure associated with day to day work activities and demands. AR pp. 390-97.

[75] AR pp. 18-19 *comparing* AR p. 395 with AR p. 397.

[76] AR p. 19 *comparing* AR p. 396 with AR p. 397.

[77] AR p. 19 *citing* AR p. 444 (Beacon) and AR pp. 305, 354, 357 (OLOL).

[78] AR p. 19.

the OLOL records reflected that Plaintiff's judgment and thought content were normal, her memory was intact, her intelligence was average, and her fund of knowledge was fair.[79]  Based on this evidence, the ALJ found that Plaintiff retained the capacity to understand, remember, and carry out one and two step instructions.[80]

Likewise, the ALJ found that Tucker's medical opinions, which were that Plaintiff's impairments were of listing-level severity, were not persuasive because they were supported by only a brief explanation, which lessened their probative value.[81]  The ALJ also found that Tucker's opinions were not persuasive because they were generally inconsistent with the same evidence that rendered Ashford's opinions unpersuasive, *e.g.*, Plaintiff's OLOL and Beacon records noting that Plaintiff was cooperative, her speech was within normal limits, her behavior was cooperative, her judgment and thought content were normal, and her intelligence was average, *etc.*[82]  To the extent Plaintiff argues the ALJ committed an error of law by not articulating the (c)(3) through (c)(5) other most persuasive factors, Plaintiff is incorrect.  As shown, after evaluating their supportability and consistency, the ALJ did not find that Tucker's or Ashford's opinions were persuasive at all,

---

[79] AR p. 19 *citing* OLOL records at AR pp. 305, 354, 357, 362.

[80] AR p. 19.

[81] AR p. 19 *citing* AR pp. 423-25.  Tucker found marked restrictions in activities of daily living; extreme difficulties in maintaining social functioning; extreme deficiencies in concentration, persistence, and pace; and extreme episodes of deterioration or decompensation in work. AR pp. 424-25. Tucker also stated:  "The pt. presents with a blunted and restricted affect, concrete though (sic) process, consistently restless and anxious, rapid pressured speech, circumstantial and sometimes tangential thought process, and endorses auditory hallucinations and visual hallucinations. Also paranoid thought content."  AR p. 424.  However, as the Commissioner points out, some of Tucker's other treatment notes do not reflect the extreme degree of mental symptoms set forth in her August 28, 2018 opinion.  *Compare* AR pp. 423-25 with AR p. 414 (April 4, 2018 Tucker record noting that, despite depression and anxiety, Plaintiff was awake, alert and oriented, and reported "she wants to take a job to assist at parties"); AR p. 415 (March 7, 2018 Tucker record noting that, despite depression, anxiety, and restricted mood and affect, Plaintiff was awake, alert and oriented, with linear thought processes and verbose); AR p. 416 (February 7, 2018 Tucker record noting that, despite depression and hearing voices, Plaintiff's anxiety was better, she was awake, alert, and oriented, her thought processes were linear, and she had fair judgment); AR p. 417 (January 10, 2018 Tucker record noting that, despite depression, hearing voices, and paranoia, Plaintiff's anxiety was okay, her thought processes were linear, and her insight and judgment were fair); and AR pp. 418-19 (November 7, 2017 Tucker record noting that, despite hallucinations, paranoia, and intermittent anxiety, Plaintiff had linear thought processes and her insight and judgment were fair).

[82] AR p. 19 *citing* Tucker's opinions at AR pp. 423-25 and *citing* AR p. 444 (Beacon) and AR pp. 305, 354, 357 (OLOL).

14

much less "equally persuasive medical opinions," and therefore, the obligation to articulate the other most persuasive factors was not triggered.

In contrast to Ashford's and Tucker's opinions, the ALJ found that the prior administrative medical findings of Pearce were persuasive based upon the supportability and consistency factors. Specifically, the ALJ concluded that Pearce's findings were supported by detailed explanations and the same evidence that rendered Ashford and Tucker's opinions unpersuasive, *e.g.*, medical records indicating that Plaintiff's speech was within normal limits, her behavior was cooperative, her judgment and thought content were normal, and her intelligence was average, *etc.*[83] The ALJ did not "play doctor,"[84] as asserted by Plaintiff, because the ALJ relied on Pearce's findings, which the ALJ found persuasive because they were supported by, and consistent with, the evidence of record before him,[85] including the OLOL and Ochsner records and Ashford's report. The ALJ did

---

[83] AR p. 19 *citing* AR p. 444 (Beacon) and AR pp. 305, 354, 357, 362 (OLOL). Pearce reviewed the records from Ochsner, OLOL, and Ashford's psychological evaluation, as well as Plaintiff's self-reports. *See* evidence of record at AR pp. 69-70 (DIB) and pp. 80-81 (SSI). As mentioned, overall, Pearce found that Plaintiff was only "moderately" limited in each of the four paragraph B criteria. AR p. 73, 84. More specifically, within the first paragraph B criteria, Pearce found that Plaintiff was "markedly limited" in the ability to understand and remember detailed instructions; within the second paragraph B criteria, was markedly limited in the ability to interact appropriately with the general public; and within the third paragraph B criteria, was "markedly limited" in the ability to carry out detailed instructions and "moderately limited" in the ability to maintain attention and concentration for extended periods. AR p. 75, 86. Pearce found that Plaintiff was not significantly limited in any of the other sub-ratings for the paragraph B criteria. AR pp. 75-76, 86-87. Pearce found: "Claimant can perform simple tasks with routine supervision. Claimant can relate to supervisors and peers on a superficial work basis. Claimant cannot relate to the general public. Claimant can adapt to a work situation." AR p. 76, 87.

[84] *Mabry v. Barnhart*, No. SA-03-CA-0280 OG NN, 2004 WL 1345092, at *7 (W.D. Tex. June 9, 2004), cited by Plaintiff at R. Doc. 10, p. 11, is distinguishable, as in that case, the court found that the ALJ made conclusions that the plaintiff "would not decompensate if he got a job" and that he lived at home "for convenience rather than because of an inability to do otherwise," but those findings were not related to his analysis of the medical evidence and did not cite any medical evidence. Further, there was one medical record from a treating/examining physician that appeared to conclude otherwise. The court held that the ALJ was bound to obtain further medical evidence before finding that the plaintiff's living situation was not derived out of medical necessity or that plaintiff would not deteriorate if he returned to work. However, instead of obtaining such medical evidence, the ALJ made medical conclusions based on his own lay opinions. 2004 WL 1345092, at *6. In this case, however, the ALJ did not base medical conclusions on his own lay opinions. He weighed the evidence in light of the appropriate legal standards and found Pearce's administrative findings persuasive, but found Ashford's and Tucker's opinions unpersuasive.

[85] The undersigned notes that the initial determination incorrectly stated that Plaintiff reported she could drive. AR pp. 73, 84. Plaintiff reported and testified that she does not drive, which the ALJ correctly noted. AR pp. 17, 50, 224. However, even though Plaintiff does not drive, she reported and/or testified that she goes outside daily, can go out alone, and can travel via walking, public transportation, or through a family member, which still supports Pearce's initial determination that Plaintiff has only moderate limitations in global functioning. AR pp. 50, 73, 84, 224. The ALJ's findings that Plaintiff shops and is able to pay bills and manage finances (AR pp. 73, 84), while seemingly

not find that any evidence submitted after the initial determination (*i.e.*, Tucker's opinion, and the Beacon and Impact records)[86] were inconsistent with Pearce's findings or that there was a gap in the evidence.[87]  The ALJ thus found that Plaintiff is only moderately limited in understanding, remembering and applying information, and moderately limited in interacting with others, and retained the capacity to understand, remember, and carry out one and two step instructions and occasionally interact with coworkers and supervisors, but never with the public.[88] Moreover, the ALJ's opinion also sets forth the ALJ's findings with respect to the other two paragraph B criteria, *i.e.*, that Plaintiff is only moderately limited with regard to concentrating, persisting and maintaining pace because her concentration was fair, her thought processes were linear and goal-directed, and her thoughts were logical and relevant, although rambling,[89] and that Plaintiff is only moderately limited in her ability to adapt or manage herself, as her judgment and insight were fair,

---

contradicted by Plaintiff's reports, are supported by other evidence in the record.  As for shopping, Plaintiff's Third Party Function Report indicated that Plaintiff shops in stores, but Plaintiff also stated that she "Don't shop for self" and "I don't," in response to the question regarding how often and how long she shops.  AR p. 224.  However, Plaintiff reported to the VE that she is assisted by her aunt when she shops; therefore, Plaintiff appears to shop sometimes.  AR p. 394.  As for paying bills and managing finances, Plaintiff reported that she is not able to pay bills, as she "lives with mom and she does everything for me," and she can only add by using her fingers.  AR p. 49, 224.  However, Plaintiff's testimony reflects that Plaintiff understands that she earns $100 to clean bathrooms every two weeks and Plaintiff solicited that work.  AR pp. 43-44.  Further, Plaintiff reported to the VE that, while she cannot mentally calculate making change, and her aunt helps her with her finances, she understands that she uses part of her income to pay a storage facility wherein her possessions are stored.  There is other correspondence from Plaintiff in the record wherein Plaintiff stated that she needed to work to pay her cell phone bill and she "have to get a job working 2 days a week because of my health, something to have a (sic) income…."  AR pp. 145, 210, 394.  All of this evidence indicates that Plaintiff is aware of her need to pay her bills, and has an awareness of her finances.

[86] Although Plaintiff complains that Pearce did not have the benefit of Tucker's opinion and the records from Beacon and Impact, such that his opinion should be discounted, the ALJ did consider that information.

[87] Plaintiff cites *Newton v. Apfel,* 209 F.3d 448, 453-55 (5th Cir. 2000) at R. Doc. 10, p. 20, wherein the Fifth Circuit noted that the ALJ erred when she relied on the testimony of a non-examining medical expert that the plaintiff was not disabled, despite that the expert stated, among other things, that the plaintiff's records were insufficient for him to determine the severity and frequency of the plaintiff's symptoms.  209 F.3d at 456-57.  Plaintiff argues that the ALJ could have contacted Tucker or Ashford for clarification or remanded the file back to the State Agency for review and further evaluation; however, in this case, the ALJ did not have questions regarding the medical opinions, and there is no indication that there were gaps in the administrative record that needed to be filled. Rather, the ALJ evaluated the medical opinions and found them unpersuasive; therefore, further clarification was unnecessary.

[88] AR pp. 15, 19 and medical evidence cited therein.

[89] AR p. 15 *citing* OLOL records and Ashford's opinion at AR p. 395 (sic, 396--concentration was fair); AR p. 362 (thought process linear and goal-directed) and AR p. 395 (thoughts logical and relevant but often rambling).

and she had no problems engaging in personal care.[90]  The ALJ's findings must be affirmed so

long as they are supported by substantial evidence, *i.e.*, more than a mere scintilla.  As referenced

above, the ALJ's findings adequately "trace the path of his reasoning,"[91] and are supported by

evidence that amounts to more than a mere scintilla; therefore, they must be affirmed.[92]

Plaintiff also argues that the ALJ selectively failed to consider the evidence of Plaintiff's

hallucinations, paranoia, and difficulty focusing, and only discussed evidence favorable to his

decision.[93]  However, the ALJ considered Plaintiff's testimony and also evaluated the medical

evidence, including Ashford's opinions, and evidence not before Pearce, *i.e.*, Tucker's opinion,

---

[90] AR p. 15 *citing* Ashford's evaluation  and Impact records at AR p. 395 (sic, 396—judgment and insight fair), pp. 416-419 (insight and judgment fair) and the Third Party Function Report, wherein Plaintiff indicated that she has "NO PROBLEM with personal care" at AR p. 222.

[91] In *Price v. Astrue,* 401 Fed. App'x 985, 986 (5th Cir. 2010), cited by Plaintiff at R. Doc. 10, pp. 5, 18, the Fifth Circuit affirmed the ALJ's finding of disability and found that the ALJ built "an accurate and logical bridge between the evidence and the final determination" when the ALJ "engaged all of the relevant evidence, made credibility determinations, and explained reasons for discounting some of the evidence in the record," as did the ALJ in this case. *Id.* at 987.

[92] *Reid v. Saul,* No. 18-4562, 2019 WL 6970763, at *16 (S.D. Tex. Nov. 20, 2019), *report and recommendation adopted,* No. 18-4562, 2019 WL 6910143 (S.D. Tex. Dec. 19, 2019) ("To the contrary, the ALJ addressed each of the four areas of mental functioning and discussed evidence supporting his conclusions that Plaintiff was moderately limited in three areas and mildly limited in one. The ALJ cited evidence that supported his conclusions, and, as that evidence amounted to more than a mere scintilla, it is substantial evidence. The ALJ fulfilled his responsibilities on this front.") *See also Richardson v. Perales,* 402 U.S. 389-90, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Martinez v. Chater,* 64 F.3d 172, 173 (5th Cir. 1995) *(superseded by statute on other grounds, see Stancle v. Colvin,* No. 4:15-00405-CAN, 2016 WL 3172784, at *8, n. 11 (E.D. Tex. June 7, 2016)).

[93] R. Doc. 10, pp. 16-18.  Plaintiff cites a number of treatment notes from April 2016 to August 2018 from Plaintiff's providers at OLOL, Tucker/Impact and Beacon, which Plaintiff argues demonstrate "that Plaintiff has ongoing hallucinations and delusions along with underlying depression and anxiety; while all these symptoms were not descrbied at every office visit, the record clearly shows these symptoms have not resolved either."  Plaintiff cites AR pp. 336, 344, 346, 360-62, 372 (OLOL records noting depression, anxiety, suicidal ideation and the OLOL December 24, 2016 ER visit prompted by Plaintiff pinning her mother against a wall); AR pp. 387, 388, 414-18, 420-21 (Tucker records noting the following symptoms and conditions, which were reported over the course of several visits and not all at the same time: anxiety attacks, difficulty breathing, focusing, and sleeping, crying spells, constant pacing, hallucinations, depression, hearing voices, paranoia, stress, restricted affect, circumstantial and verbose thought content, poor insight and judgment, as well as medication management, Plaintiff's reports of her medications not working, Plaintiff's reports of not taking her medications, and improvement in some of these conditions. In July and August 2018 notes, Tucker noted that Plaintiff had made "no progress"); AR pp. 431-35, 439, 451, 453, 472-90 (Beacon records noting involuntary hospitalization of Plaintiff due to her failure to take medications and pushing her mother; Plaintiff's uncooperativeness, suspicious thoughts, and impaired concentration, attention, insight, judgment and memory at intake; Plaintiff being more cooperative the next day; Plaintiff's relapse of illicit drug use and refusal to take medications; Plaintiff's denial of hallucinations but illogical delusions and circumstantial thought processes; and improvement of Plaintiff's presentation during her eleven day inpatient stay).

and the Beacon and Impact records.[94] The ALJ found that, despite that Plaintiff sometimes reported hallucinations, paranoia, and difficulty focusing,[95] Plaintiff was also noted to be appropriately dressed and groomed, and cooperative and talkative; had fair concentration and fund of knowledge, and intact memory; had normal speech, behavior, judgment, and thought content; and, had eye contact, appearance, and posture within normal limits.[96]   Importantly, per 20 C.F.R. § 404.1520c, the ALJ is not required to articulate how he considered each medical opinion or prior administrative medical finding from one medical source individually, and "the ALJ is not required to discuss every single piece of evidence…the ALJ's decision need be supported by no more than substantial evidence."[97]   Despite that there may exist evidence to the contrary, and despite that the Court may disagree with the ALJ's decision, the ALJ's findings cannot be disturbed if they are supported by substantial evidence.[98]   Here, the ALJ considered the medical evidence, explained

---

[94] *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000)*,* cited by Plaintiff at R. Doc. 10, p. 19, is distinguishable as having been decided prior to the revised analysis set forth in 20 C.F.R. § 404.1520c, and because in *Loza*, the ALJ rejected medical opinions of the plaintiff's treating physicians and the Veterans Administration with no explanation.  219 F.3d at 395.  That is not the case here, as the ALJ provided explanations for his findings.

[95] *See* the ALJ's opinion and the medical evidence and testimony cited noting Plaintiff's hallucinations (and specifically, Plaintiff's denial of hallucinations and paranoia during her December 24, 2016 OLOL visit at AR p. 361), and Plaintiff's difficulty focusing/concentrating. AR pp. 16-18.  As the ALJ pointed out, the medical records reflecting OLOL's treatment of Plaintiff for bizarre, paranoid behavior in the emergency room, and Plaintiff's inpatient stay at Beacon for hallucinations and aggressive behavior toward her mother, also reflected that Plaintiff tested positive for cocaine.  AR p. 17 *citing* AR pp.  360-63, 431-32.  The ALJ also noted that the medical records indicated several instances of Plaintiff's non-compliance with her medications.  AR p. 18 *citing* AR pp. 387, 414-15, 431, 420.

[96] AR pp. 18-19 *citing* AR p. 395-96 (Ashford), AR p. 444 (Beacon), and AR pp. 305, 354, 357, 362 (OLOL).

[97] *See Reid,* 2019 WL 6970763, at *18, n. 197 ("In his response, Plaintiff argues that the ALJ ignored certain evidence and discussed only the evidence favorable to his determination. The court reminds Plaintiff that the ALJ is not required to discuss every single piece of evidence…. *See Giles v. Astrue*, 433 F. App'x 241, 251 (5th Cir. 2011)(unpublished)("[T]here will always be some evidence that is not specifically discussed in the Commissioner's decision. Our review is limited to examining whether the decision to deny benefits is supported by substantial evidence in the record[.]).

[98] *See Reid,* 2019 WL 6970763, at *18 ("In support of his decision, the ALJ cited more than a scintilla of evidence. No matter how much evidence exists to the contrary, a decision supported by substantial evidence should not be disturbed. See 42 U.S.C. § 405(g).").  This standard, and 20 C.F.R. § 404.1520c's prohibition against deference to any medical source, is fatal to Plaintiff's arguments urging the Court to find Tucker's and Ashford's opinions to be at least as persuasive as Pearce's opinions.  Such a finding would require the Court to re-weigh the evidence, which the Court is not permitted to do.  *See* AR pp.  9-10, 16, 19-20, and *Newton,* 209 F.3d at 452 (in applying the substantial evidence standard, the court must review the entire record as whole, but may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner, even if the evidence weighs against the Commissioner's decision).

his evaluation of that evidence,  and his findings are based on the proper legal standards and are supported by substantial evidence in the record.

### B.  Substantial Evidence Supports the ALJ's RFC Findings

Plaintiff argues that Tucker's and Ashford's  medical opinions "met Plaintiff's burden of proof to come forward with evidence demonstrating that she is 'disabled'…."[99]  According to Plaintiff, this is because the VE testified that a person who has periods of decompensation for one hour occurring one to two times per month on an unpredictable basis, or who misses four or more days of work per month,[100] is unable to maintain employment.[101]  Plaintiff is apparently relying on Tucker's opinion that Plaintiff has extreme limitation in periods of decompensation and is likely to miss four or more days of work per month.[102]

To the extent Plaintiff challenges the ALJ's RFC finding that Plaintiff could adjust to other work as contradicted by Tucker's and Ashford's opinions, and argues that their opinions *alone* sustained her burden of proving a disability, the ALJ was precluded by 20 C.F.R. § 404.1520c from giving controlling weight to the medical opinion of any medical source in his determination of disability.  Even so, the ALJ considered Ashford's opinions and Tucker's opinions as part of his analysis, and found them unpersuasive for the reasons explained.[103]

---

[99] R. Doc. 10, pp. 7-8.

[100] *See* AR p. 425, Tucker's opinion that Plaintiff is likely to be absent from work more than four days per month as a result of her impairments and has "extreme" limitations with respect to episodes of deterioration or decompensation in work settings.

[101] *See* AR pp. 63-64.  On questioning of Plaintiff, the VE testified to the latter; however, the VE's testimony regarding the former appears to have been based on a hypothetical involving an individual randomly missing work for one-hour blocks one to two times per *week*, not per month.  AR p. 64.

[102] AR p. 425.

[103] AR pp. 18-19. It is unclear if Plaintiff is also arguing that the ALJ improperly found that her impairments did not meet or equal a listing.  At step 3, and after considering other medical evidence, Ashford's medical opinion, and evidence from nonmedical sources, *i.e.*, Plaintiff's Third Party Function Report, the ALJ found that Plaintiff's impairments did not meet or medically equal the severity of a listed impairment.  AR p. 15 *citing* OLOL, Ochsner, and Impact records, Ashford's opinion, and Plaintiff's Third Party Function Report.  At the hearing, the ALJ specifically asked Plaintiff's counsel if Plaintiff was asserting that her impairments met or equaled a listing; Plaintiff's counsel stated that Plaintiff was not arguing that her impairments met or equaled a listing.  AR p. 32.

15

Plaintiff also argues that remand is warranted because the ALJ failed to accurately address all the practical effects of Plaintiff's impairments when he improperly discredited Tucker's and Ashford's opinions, which resulted in an inaccurate RFC. As such, according to Plaintiff, the correct RFC was not posed to the VE for consideration and no vocational evidence exists such that the Commissioner can sustain its burden at step 5 of the sequential evaluation process to show that Plaintiff can engage in other work.[104] Again, this argument assumes the ALJ improperly discredited Tucker's and Ashford's opinions, which premise has been rejected. After weighing the evidence, the ALJ found that those opinions were not persuasive because they were not supported by, and consistent with, the other medical evidence in the record.

## VII.    Recommendation

The analysis above demonstrates that Plaintiff's claim of reversible error is without merit. The record considered as a whole supports the finding that the ALJ applied the proper legal standards and substantial evidence supports the determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that under sentence four of 42 U.S.C. § 405(g), the final decision of the Acting Commissioner of Social Security be **AFFIRMED,** and this action be **DISMISSED with prejudice**.

Signed in Baton Rouge, Louisiana, on March 2, 2021.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[104] R. Doc. 10, p. 8. *Fraga v. Bowen*, 810 F.2d 1296 (5th Cir. 1997), cited by Plaintiff at R. Doc. 10, pp. 3, 8, does not direct a contrary result. In *Fraga*, as cited by *Newton*, 209 F.3d at 458, the Fifth Circuit held that, if impairments are solely exertional or the nonexertional impairments do not sufficiently affect the claimant's residual functional capacity, then the Commissioner may rely exclusively on the Grids to determine whether there is other work in the economy that the claimant can perform. *See Fraga,* 810 F.2d at 1304. If, however, the claimant suffers from nonexertional impairments or a combination of exertional and nonexertional impairments, then the Commissioner must rely on a vocational expert to establish that such jobs exist in the economy. In this case, the ALJ found that Plaintiff's nonexertional impairments affected her RFC and relied on the VE's testimony to determine that other jobs existed in the economy that Plaintiff can perform.